# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00298-CV

**Mickey V. Elliott, Appellant**

**v.**

**Rockwood Village Partners, Ltd., Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-11-000450, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Mickey V. Elliott sued Rockwood Village Partners, Ltd. ("Rockwood") for breach of a promissory note ("the Elliott Note"). Rockwood asserted various affirmative defenses and counterclaims, including breach of contract and breach of the duty of loyalty by Elliott. After a bench trial, the district court ruled in Rockwood's favor and reformed the Elliott Note's payment term. The court also rendered judgment that the Elliott Note was not yet due and payable and that Elliott's conduct constituted breach of contract and breach of his duty of loyalty as one of Rockwood's limited partners. The court ordered Elliott to pay Rockwood's attorneys' fees. In six issues, Elliott challenges the attorneys' fee award, the trial court's conclusion that the Elliott Note was not due and payable, and the manner in which the court reformed the note's payment term. We will reverse the judgment in part and modify it in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

Elliott is one of Rockwood's limited partners. In December 2009, Elliott loaned Rockwood $36,000 to enable Rockwood to pay its 2009 property taxes and cover some other minor expenses. In exchange, Rockwood executed the Elliott Note in the principal amount of $36,000, with the following payment term:

> **Terms of payment (principal and interest):** All principal and accrued interest thereon shall be paid in full by Maker to Payee by no later than December 31, 2010.

The Elliott Note identified Rockwood as the "Maker" and was executed by Rockwood's general partner at the time, Rockwood Village Management, Inc.

In January 2011, after the note had not been paid by the due date, Elliott's counsel sent a letter to Rockwood demanding payment. Rockwood took the position that because the Elliott Note had a specific due date, it violated a provision of the Rockwood Limited Partnership Agreement (the "Partnership Agreement") and was therefore unenforceable. The provision Rockwood relied on was section 7.03 of the Partnership Agreement, which provides:

> 7.03 *Distribution of monies.* Partnership expenses and mortgages shall be promptly paid in the normal order of business. *Loans from limited partners (including interest) shall be repaid quarterly, as net profits are available to do so in the judgment of the general partner.*

(Emphasis added.) Rockwood maintained that this provision prohibited a promissory note given in exchange for a loan from a limited partner from having a specific due date and required that the payment term for a limited-partner loan could only state that the loan "be repaid quarterly, as net

2

profits are available to do so in the judgment of the general partner." In other words, Rockwood took the position that not only was it not obligated to make quarterly payments, it *never* had to repay the Elliott Note unless "net profits" were available. According to Elliott, Rockwood informed him that, in the general partner's judgment, sufficient funds were not available for repayment of the note.

Thereafter, Elliott sued Rockwood alleging that the Elliott Note was due and payable and asserting a breach-of-contract cause of action. Elliott also contended that Rockwood was estopped from refusing to repay the note on its stated maturity date and asserted a cause of action for "money had and received." In its answer, Rockwood asserted as a defense that the Elliott Note was void as written because it "provides for a short-term maturity date in contravention of the requirement that loans from limited partners are to be paid as net profits become available in the judgment of the general partner." Rockwood also asserted counterclaims for: (1) breach of contract, asserting that Elliott breached the Partnership Agreement by taking a promissory note with a short-term maturity date and seeking to collect on it; (2) breach of the duty of loyalty, for essentially the same conduct; and (3) reformation, asking the court "for an order reforming the promissory note to conform to § 7.03 of the [Partnership Agreement] providing for repayment of loans in quarterly payments as net profits are available in the judgment of the general partner." Rockwood subsequently filed an amended answer in which it asserted a new counterclaim for "estoppel," dropped the counterclaim for reformation, and replaced the reformation counterclaim with a "request for declaratory judgment" asking the court to declare that the Elliott Note is "payable quarterly as net profits are available to do so in the judgment of the general partner."

3

The case was tried to the bench. Rockwood contended that the Elliott Note was not due and payable because the Partnership Agreement prohibits making notes payable on a fixed date, but rather contemplates only that notes from limited partners be repaid as profits become available in the judgment of the general partner. Elliott countered that Rockwood had waived any such prohibition by executing numerous limited-partner promissory notes with specific due dates. These included several notes to limited partners made in exchange for money loaned to Rockwood for the purpose of purchasing its principal asset, a shopping center. The trial court ruled that the Elliott Note was not due and payable and made the following relevant findings of fact and conclusions of law:

FOF 18:    The Partnership has had no net profits available to repay the Elliott Note at any time since Mr. Elliott made the loan evidenced by the Elliott Note.

FOF 24:    The Elliott Note is valid and enforceable as reformed to comply with § 7.03 of the Partnership Agreement such that it is due and payable when the Partnership has net profits available to pay it.

CL 11:    The terms of the Partnership Agreement apply to Mr. Elliott's loan and the Elliott Note.

CL 12:    Mr. Elliott's loan is "payable as net profits are available to do so in the judgment of the general partner."

CL 13:    The Partnership did not waive the repayment terms of loans as provided in § 7.03 of the Partnership Agreement with respect to Mr. Elliott's loan.

CL 15:    The Elliott Note is not due and payable because the Partnership has not had net profits available to pay it, as required by § 7.03 of the Partnership Agreement, and Mr. Elliott is not entitled to recover under the Elliott Note in accordance with his claim.

From these findings and conclusions, it is obvious that the trial court's ultimate ruling that the Elliott Note was not yet due and payable was based on its determination that: (1) section 7.03 of the Partnership Agreement prohibited agreements that would require loans from limited partners to be repaid by a specific due date, and (2) in order to comply with the Partnership Agreement, the Elliott Note's payment term must be reformed to provide that it is due and payable only when and to the extent Rockwood has net profits available to pay it. The trial court concluded that the note as written was not in compliance with the provisions of the Partnership Agreement, reformed it in a manner that, in its view, rendered it compliant, and declared that, as reformed, it was not due and payable. The court also rendered judgment that by taking and attempting to enforce the note, Elliott had breached the Partnership Agreement and breached his duty of loyalty to Rockwood. The court did not, however, find that Rockwood had suffered any damages as a result of these breaches. Finally, the judgment ordered Elliott to pay Rockwood $67,000 in attorneys' fees and included conditional awards for Rockwood's appellate attorneys' fees. Elliott then perfected this appeal.

## DISCUSSION

### *Waiver of Partnership Agreement Section 7.03*

In his fourth issue, Elliott contends that the trial court erred in concluding that the Elliott Note as originally written violated the terms of the Partnership Agreement and by reforming it in a manner that rendered it not yet due and payable. In support of this contention, Elliott's sole argument on appeal is that Rockwood had waived compliance with section 7.03 of the Partnership Agreement by executing promissory notes to a number of other limited partners that contained specific due dates—either expressly stated or ascertainable from payment and amortization tables.

5

In other words, Elliott contends only that Rockwood waived its right to claim that it was not obligated to repay limited-partner loans until net profits were available regardless of a date specified in the note itself. Elliott did not raise an appellate issue, nor does he argue, that the promissory note is valid and enforceable as written for any reason other than Rockwood's waiver.

Waiver exists if a party intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *See Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). In order to evaluate Elliott's waiver argument, we must first consider whether the various promissory notes in which Rockwood agreed to repay limited-partner loans by a date certain are actually inconsistent with section 7.03 of the Partnership Agreement. Only if there is an inconsistency could the execution of those notes be found to constitute either the relinquishment of a known right or conduct inconsistent with claiming that right. The question presented, then, is one of contract interpretation: Does the Partnership Agreement confer on Rockwood the right to refuse to repay any loan from a limited partner unless and until net profits are available? We conclude that it does not.

Absent ambiguity, which we do not find here, the construction of a contract is a question of law for the court. *Buys v. Buys*, 924 S.W.3d 369, 372 (Tex. 1996). We examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We interpret the contract by ascertaining the true objective intentions of the parties, based on the contract language. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). We presume that the parties to a contract intended every clause to have some effect. *Heritage Res.,*

6

*Inc.*, 939 S.W.2d at 121. We give words their plain, common, or generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Id.*

Here, the crucial inquiry is whether the Partnership Agreement manifests an intent that limited-partner loans cannot be made due and payable on or by a specific date. Rockwood asserts that such intent is found primarily in section 7.03. That section, however, titled "Distribution of monies," merely states that loans from limited partners "shall be repaid quarterly, as net profits are available to do so in the judgment of the general partner." Nothing in this provision prohibits making a promissory note with a specific final due date. Rather, it simply requires that if "net profits" are available, Rockwood must make payments on limited-partner loans on a quarterly basis instead of waiting until the date the note is due and payable. Section 7.03 thus places on Rockwood an *additional* burden (to repay quarterly, if possible); it does not remove the obligation to comply with the express terms of a promissory that has a specific due date.

This interpretation is consistent with the sample promissory note attached to the Partnership Agreement itself, which includes the following payment term:

> **Payment Schedule:** Payments shall be quarterly and shall be in an amount equal to $_____ (or more) per month until the note is paid in full. Such quarterly payments shall be made until the entire principal and accrued interest on such note is paid in full. Payments shall be credited first to interest and then to principal. Payments on all other notes of even date herewith from Maker to all other partners of Rockwood Village Partners, Ltd. must be made at the same time payment is made on this note.

This form promissory note attached to the Partnership Agreement does not contain any language precluding partner loans that would require repayment by a date certain—a date that could, if

necessary, be determined by creating an amortization schedule using the interest rate, the total amount of the loan, and the designated quarterly payment.[1]

Thus, we conclude that the Partnership Agreement does not prohibit or prevent Rockwood from making a promise to repay a limited partner on or by a date certain, nor does it give Rockwood the right to refuse to repay such a loan until, in the general partner's judgment, "net profits" are available to do so. Consequently, the fact that Rockwood executed various limited-partner promissory notes containing specific due dates is not inconsistent with the terms of section 7.03 and therefore cannot be found to result in the waiver of any of the Partnership Agreement's provisions.

Even if we found section 7.03 of the Partnership Agreement to be ambiguous, we would reach the same result here. It is well settled that if a contract is ambiguous, a court should adopt the construction of the instrument placed on it by the parties themselves unless there is clear language in the instrument indicating a contrary intent. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56 (Tex. App.—Dallas 2006, pet. denied). By giving numerous promissory notes to limited partners that contained a fixed due date, Rockwood clearly manifested its construction of the Partnership Agreement to be that section 7.03 did not prohibit such a provision. Rockwood's own interpretation of section 7.03, as manifested by its

---

[1] Rockwood urges that the Partnership Agreement distinguishes between loans from partners it received to purchase assets and loans from partners for operating expenses, such as to pay property taxes. While the Partnership Agreement contemplates that partners may make both types of loans to Rockwood, it contains no provision indicating that repayment of partner loans is to be handled differently depending on what the money is used for.

8

actions done in the course of performance, must be given great weight by a court seeking to discern the parties' intent:

> No principle of interpretation of contracts is more firmly established than that great, if not controlling, weight should be given by the court to the interpretation placed upon a contract of uncertain meaning by the parties themselves. Courts rightfully assume that parties to a contract are in the best position to know what was intended by the language employed.

*Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979).

In summary, we conclude that Rockwood's execution of promissory notes containing specific due dates is neither inconsistent with nor prohibited by the Partnership Agreement. Accordingly, executing such notes did not result in a waiver of any provision of the Partnership Agreement. We overrule Elliott's fourth appellate issue, which depends entirely on a finding of waiver.

### *Reformation of the Promissory Note*

In his fifth issue, Elliott challenges the trial court's reformation of the Elliott Note to change the payment term from providing that the note "shall be paid in full by Maker to Payee by no later than December 31, 2010" to providing that it is "due and payable when [Rockwood] has net profits available to pay it." He contends that the note should be reformed in a more equitable manner that puts his own right to repayment on equal footing with that of other limited partners who have loaned Rockwood money, specifically, to include the following payment provision:

> The note is payable the sooner of (1) cash flow that is not needed for operations or reserves for the partnership's property and that is available in the reasonable

9

discretion of the general partner of the partnership, (2) the closing of the sale of the property, or (3) the funding date of any refinancing of the mortgage on the property.

Reformation is an equitable remedy available on proof of the terms of the actual, intended agreement, coupled with proof that the written instrument is in error due to either a mutual mistake or a unilateral mistake accompanied by the adversary's inequitable conduct. *See Davis v. Grammar*, 750 S.W.2d 766, 767-68 (Tex. 1988). Inequitable conduct may be found to exist when one party knows a writing contains a mistake but does not mention the mistake in order to benefit from the other party's oversight. *See id.* at 768 (holding that this type of "mistake and silence" is equivalent to mutual mistake); *Cambridge Cos. v. Williams*, 602 S.W.2d 306, 309 (Tex. Civ. App.—Texarkana 1980) (holding that party's silence in face of known mistake constitutes "inequitable conduct"), *aff'd*, 615 S.W.2d 172 (Tex. 1981). In such instances the silent party will not be allowed to take unfair advantage of a known mistake. *See, e.g.*, *Hamberlin v. Longview Bank & Trust Co.*, 770 S.W.2d 12, 14 (Tex. App.—Texarkana 1989, writ denied).

In the present case, the trial court reformed the Elliott Note because it concluded that the note contravened the Partnership Agreement by purporting to allow Elliott to collect the note on its maturity date. But as we have held above, the Elliott Note as originally drafted did *not* contravene the terms of the Partnership Agreement, and therefore reformation was not necessary to make it valid and enforceable as written. The other apparent basis for the trial court's reformation is likewise erroneous—i.e., that Elliott breached a duty of loyalty by loaning Rockwood money on the terms contained in the Elliott Note or by attempting to collect the debt evidenced by the note in violation

10

of the terms of the Partnership Agreement. Neither of the stated bases supports the trial court's reformation of the note.

With the exception of the waiver issue discussed above, however, Elliott has not brought an appellate issue asserting that the trial court erred in reforming the note at all. Rather, he argues in his fifth issue that the note should have been reformed in a more equitable way. In light of that, we will sustain issue five and grant only the relief Elliott has requested, i.e., that the reformation of the Elliott Note provide for payment terms equivalent to those contained in promissory notes given to other limited partners. We decline, however, Elliott's request to raise the interest rate from 10% to 12%. The interest rate is not part of the payment term that was erroneously reformed by the trial court.[2]

### *Attorneys' Fees*

In his first appellate issue, Elliott contends that the trial court erred by awarding Rockwood its attorneys' fees pursuant to civil practice and remedies code section 38.001(8) when the trial court did not award Rockwood damages for Elliott's breach of the Partnership Agreement found by the court.[3] Rockwood's breach-of-contract cause of action alleged that Elliott breached the Partnership Agreement by accepting the Elliott Note and attempting to collect on it. Although the trial court found that such breaches occurred, it did not award damages or grant other relief pursuant to Rockwood's breach-of-contract claim. Section 38.001(8) provides that a party "may recover

---

[2] Because of our disposition of Elliott's fifth issue, we need not address his sixth issue, which urges that he be granted relief under equitable and quasi-contract theories.

[3] On appeal Elliott does not challenge the trial court's findings or conclusion regarding his breach of the Partnership Agreement.

11

reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008). The Texas Supreme Court has held that to recover attorney's fees under section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.2d 195, 201 (Tex. 2004); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (citing *State Farm Life Ins. Co v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995)). Because Rockwood did not recover damages pursuant to its breach-of-contract claim, an award of attorneys' fees was not available under section 38.001(8).[4]

In his second issue, Elliott contends that the trial court erred by awarding Rockwood its attorneys' fees pursuant to civil practice and remedies code section 37.009, which authorizes the court to award reasonable and necessary attorneys' fees as are equitable and just in any proceeding brought under the Uniform Declaratory Judgments Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). The purported basis for awarding fees pursuant to the UDJA was the trial court's "declaration" in its judgment that the Elliott Note was reformed.

The UDJA is "not available to settle disputes already pending before a court." *BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990). Awarding attorneys' fees under the UDJA is improper if declaratory relief is requested for the first time in an amended petition

---

[4] While Rockwood urges that it gained something of value through the trial court's reformation of the Elliott Note, reformation is an equitable remedy, not one available under a breach-of-contract theory of recovery. It cannot, therefore, support an award of attorneys' fees under section 38.001(8), which provides for recovery of attorneys' fees if the claim is based on "an oral or written contract." *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008).

and merely raises the same issues already pending in the action. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) ("[S]imply repleading a claim as one for a declaratory judgment cannot serve as a basis for attorney's fees, since such a maneuver would abolish the American Rule and make fees 'available for all parties in all cases.'") (quoting *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009)); *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 873 (Tex. App.—Dallas 2005, no pet.) ("A declaratory judgment action is improper if declaratory relief is requested for the first time in an amended petition and merely raises the same issues."). In its original answer, Rockwood asserted a counterclaim for reformation, specifically requesting that the trial court "reform the promissory note[] to conform to § 7.03 of the [Partnership Agreement]." In its amended petition, Rockwood recast its request for reformation of the contract as a "request for declaratory judgment," in which it asked for "a ruling that the [Elliott Note] is payable quarterly as net profits are available to do so in the judgment of the general partner." It is obvious that Rockwood simply repackaged its cause of action for reformation, for which attorneys' fees are not available, into a request for declaratory relief. Moreover, the judgment itself is not a declaration of rights so much as a reformation of the payment term of the Elliott Note. The judgment recites that it "declares" that "the Elliott Note is reformed." A party may not plead for declaratory relief simply to pave the way to recover attorneys' fees. *Etan Indus.*, 359 S.W.3d at 624.

We sustain Elliott's first and second appellate issues and hold that Rockwood was not entitled to attorneys' fees pursuant to civil practice and remedies code section 38.001(8) or section 37.009.[5]

**CONCLUSION**

For the reasons stated above, we reverse the trial court's award of attorneys' fees to Rockwood and render judgment that Rockwood take nothing on its claim for attorneys' fees. In addition, we modify the judgment so that the payment term of the Elliott Note is reformed to provide:

> The note is payable the sooner of (1) cash flow that is not needed for operations or reserves for the partnership's property and that is available in the reasonable discretion of the general partner of the partnership, (2) the closing of the sale of the property, or (3) the funding date of any refinancing of the mortgage on the property.

The remaining portions of the district court's judgment were not challenged on appeal and are therefore affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Modified and, as Modified, Affirmed in Part; Reversed and Rendered in Part

Filed: December 12, 2012

---

[5] Because of our disposition of Elliott's first and second appellate issues, we need not address his third issue, which challenges the amount of the attorneys' fee award.

14