ETAN INDUSTRIES, INC. and Etan Industries, Inc., d/b/a CMA Cablevision and/or CMA Communications, Petitioner,

v.

Ronald LEHMANN and Dana Lehmann, Respondents.

No. 10–0318.

Supreme Court of Texas.

Dec. 16, 2011.

Rehearing Denied March 30, 2012.

Karen Ann Piotrowski, Gardere Wynne Sewell LLP, Dallas, TX, Edward D. Burbach, Leslie Ritchie Robnett, Gardere Wynne Sewell LLP, Austin, TX, C.E. Clo-

ver Jr., Conner Cantey Clover Chaney & Walters, Sealy, TX, for Petitioner.

Ronald Lehmann, Giddings, TX, pro se.

Dana Lehmann, Giddings, TX, pro se.

Max E. Roesch, Max E. Roesch, P.C., Giddings, TX, for Respondents.

D. Gibson Walton, Hogan Lovells US LLP, Houston, TX, for Amicus Curiae Texas Cable Association.

PER CURIAM.

Defendant Etan Industries, Inc. contends that the tort claims against it are barred by the two-year statute of limitations. It also argues that the declaratory judgment against it was unwarranted. We agree and accordingly reverse and render judgment for Etan.

Etan, a cable television and internet provider, had cable lines running on two properties owned by Ronald and Dana Lehmann (the Lehmanns). The properties were located on Highways 77 and 290. Etan's cable lines were placed on poles belonging to Bluebonnet Electric Cooperative, Inc., an electricity provider. Bluebonnet had easements on the Lehmann properties allowing it to place and operate "an electric transmission or distribution line or system" on the properties. Etan and Bluebonnet[1] had written agreements known as joint use or pole attachment agreements. The agreements allowed Etan to make use of Bluebonnet's poles, but only "to the extent [Bluebonnet] may lawfully do so," and stated that Etan was responsible for obtaining its own easements and rights-of-way from property owners.

The Lehmanns purchased the Highway 77 property in 1986. At the time, Bluebonnet had lines running within an easement on this property. In December 2000, Etan hung a cable on Bluebonnet's poles. Ronald's brother Steven also owned property along Highway 77. Steven immediately noticed Etan's cable on his own property and on Ronald's property, and notified Ronald. Steven thereafter had several conversations with employees of Bluebonnet and Etan, described below. Steven testified that he would always "fully apprise" Ronald of the conversations. Ronald likewise confirmed that Steven "told me everything" about the conversations.

Ronald and Steven decided Steven would call Bluebonnet about the new line. The day after noticing the line, Steven called Bluebonnet and was told the line belonged to Etan. Steven called Etan and spoke to Etan employee Jerry Smith. Smith told Steven that Etan had an easement and that Smith would send a copy of it to Steven. Steven waited for "a while" and called Smith back. Smith told Steven he was having trouble locating the easement but would find it and send it. In Summer 2001, Steven called Smith again. This time, Smith told Steven that Smith had been mistaken and Etan did not have an easement on the Highway 77 property. Smith claimed however that Etan had an oral agreement with Bluebonnet allowing Etan to use Bluebonnet's easements. According to Ronald's testimony, Smith told Steven that Etan was "like in partnership" with Bluebonnet, and Etan could use Bluebonnet's easement. Based on this representation, "[w]e just dropped it."

In December 2002, Ronald read a newspaper article about *Marcus Cable Associates, L.P. v. Krohn*, 90 S.W.3d 697 (Tex. 2002). In that case, we held that an easement permitting an electric cooperative to construct and maintain "an electric trans-

---

1. Herein, Etan refers to Etan Industries, Inc., d/b/a CMA Cablevision, and relevant predecessors in interest. Bluebonnet refers to Bluebonnet Electric Cooperative, Inc. and relevant predecessors in interest.

mission or distribution line or system" did not allow a cable television provider under a joint use agreement to place cable television lines in the easement. *Id.* at 699, 706–07. The Lehmann brothers both testified that they understood the case to hold a cable company could not hang a communication line in an electrical transmission easement. According to Steven, the *Krohn* decision "just threw up a red flag and I went to investigate it some more." The brothers decided to contact Bluebonnet. In December 2002, Steven spoke to a Bluebonnet representative, who informed Steven that Etan could use the Bluebonnet poles under the pole attachment agreements but that Etan was required to obtain its own easements from property owners. Bluebonnet informed Steven that without a separate easement Etan was trespassing. Steven understood Bluebonnet's position—that Etan was required to obtain its own easements—to contradict Smith's earlier representation that Etan did not need a separate easement. Ronald, likewise, understood that "[w]e had two conflicting stories." Bluebonnet told Steven that it would contact Etan "and try to get this thing worked out," but Steven and Ronald did not hear back from Etan or Bluebonnet. Also during this time period, Ronald went to the courthouse to look for property records of easements. Ronald was not a lawyer but had some experience conducting real estate transactions and reviewing real property records. He was unable to locate any Etan easements on his properties.

Steven and Ronald eventually decided to contact a lawyer in mid to late 2003. The lawyer contacted Bluebonnet and requested documentation regarding the easements on his clients' properties. Bluebonnet informed the lawyer that locating the documents would take some time. In July 2004, the lawyer received documents from Bluebonnet. No Etan easement was produced. The documents included Bluebon-

net easements on the properties, and also included pole attachment agreements stating that "[e]ach party shall be responsible for obtaining its own easements and rights-of-way." In or about August 2004, Ronald and Steven met with their lawyer and reviewed the documents.

Steven filed suit against Etan for trespass in December 2004. Steven's case settled in September 2005. In October 2005, Ronald and Dana Lehmann filed suit pertaining to the Highway 290 property. In April 2006, the Lehmanns added claims pertaining to their Highway 77 property. Ronald testified that he waited to sue on the Highway 77 property because Steven had sued on his Highway 77 property, and Ronald decided to "watch and see" what happened in Steven's suit.

The jury rejected trespass and other tort claims pertaining to the Highway 290 property, and found that Etan had obtained a prescriptive easement on this property.

With respect to the Highway 77 property, the jury found that Etan had trespassed on and made a negligent misrepresentation concerning this property. On the issue of limitations, the jury found in Question 5 that the Lehmanns filed their claims within two years of the date they discovered or in the exercise of reasonable diligence should have discovered the injury to their property. The jury found in Question 6 that Etan fraudulently concealed its wrongful conduct pertaining to the trespass and misrepresentation claims. It found in Question 7 that the Lehmanns knew or in the exercise of reasonable diligence should have known of Etan's fraudulent concealment on July 1, 2004, the date their attorney received the above-described documents relating to the easements and pole attachment agreements. The trial court rendered judgment on the verdict for actual damages of $15,000 and

attorney's fees of $65,000, and also awarded a declaratory judgment and a permanent injunction. The court of appeals affirmed, with one justice dissenting. 308 S.W.3d 489 (Tex.App.–Austin 2010).

■ We agree with Etan that the Lehmanns' common-law tort claims were barred by limitations. The applicable statute of limitations runs for two years from the day the cause of action accrues. TEX. CIV. PRAC. & REM.CODE § 16.003. Generally, a cause of action accrues when a wrongful act causes a legal injury. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 221 (Tex.2003). The date a cause of action accrues is normally a question of law. *Id.; Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 202 (Tex.2011).

■ The Lehmanns contend that Etan's fraudulent concealment made their claims timely. A defendant's fraudulent concealment of wrongdoing can toll the running of the limitations period. *Kerlin v. Sauceda,* 263 S.W.3d 920, 925 (Tex. 2008). However, even if we fully credit the Lehmanns' contention that Etan misrepresented that it had a legal right to use the Bluebonnet easements, and assume without deciding that these statements can be characterized as a fraudulent concealment under Texas law, the legal effect of that concealment does not extend the limitations period indefinitely. "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983); *see also BP Am. Prod. Co. v. Marshall,* 342 S.W.3d 59, 67 (Tex.2011).

As described above, in December 2000, the Lehmanns discovered that a cable had been placed on their property on the day it was placed there, and knew the next day that Etan had installed the line.

In December 2002, the Lehmanns learned about this Court's *Krohn* decision, and correctly understood it to hold that an electric utility's easement could not be used by a cable television company. Also by this date, (1) Etan had admitted to the Lehmanns that Etan did not have an easement on the property, (2) Bluebonnet had informed the Lehmanns that Etan needed its own easement to use the Bluebonnet poles on the Lehmanns' properties and that without a separate easement Etan was trespassing, (3) the Lehmanns knew they had received conflicting information from Etan and Bluebonnet, and (4) Etan had failed to produce, and Ronald had not independently uncovered, any documentation suggesting that Etan had a right to use the Lehmann property, despite Etan's prior representations that it would provide such documentation.

On these facts, we hold as a matter of law that the estoppel effect of the alleged fraudulent concealment ended in December 2002 at the latest. By that date, the Lehmanns were apprised of facts, conditions, and circumstances sufficient to cause a reasonable person to make inquiry that would lead to the discovery of the concealed cause of action. Because the Lehmanns did not file suit until more than two years after this date, their claims were time-barred. *See Kerlin,* 263 S.W.3d at 925 (rejecting fraudulent concealment finding because, as a matter of law, plaintiff could have discovered existence of claims through reasonable diligence before limitations expired); *Marshall,* 342 S.W.3d at 69 (same); *Emerald Oil,* 348 S.W.3d at 209 (concluding as a matter of law that assertion of fraudulent concealment was unavailing because plaintiffs had "actual knowledge of alleged injury-causing conduct" more than two years before filing suit); *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 94 (Tex.2004) (holding that limitations be-

gins to run as a matter of law once claimant is on notice that "something is amiss").

■ Etan also challenges the trial court's award of declaratory relief. The trial court awarded a declaratory judgment stating that neither Bluebonnet's easements nor Etan's pole attachment agreements with Bluebonnet provided Etan with easements or other rights-of-way on the Lehmanns' properties.

Etan argues that the claims for declaratory judgment were moot because Etan had removed its lines from the Lehmanns' properties prior to trial. We agree. We have recently noted that a request for declaratory judgment is moot if the claim presents "no live controversy." *Tex. A & M Univ.-Kingsville v. Yarbrough*, 347 S.W.3d 289, 290 (Tex.2011). We further explained that declaratory relief is not warranted unless the claim presents a "substantial controversy" of "immediacy and reality." *Id.* at 291 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). The trial court had no reason to declare that Etan could not place lines on the Lehmanns' property in the future, absent a reasonable basis for concluding that without a declaratory judgment Etan might do so in defiance of the court's judgment finding it liable for trespass. We see no basis for reaching this conclusion on this record. *Cf. Krohn v. Marcus Cable Assocs., L.P.*, 201 S.W.3d 876, 882 (Tex.App.-Waco 2006, pet. denied) (holding that property owner's request for injunctive relief against cable company was moot once the cable in issue was removed).

■ The Uniform Declaratory Judgment Act (UDJA) is not appropriately employed to remedy a trespass occurring prior to trial that is the subject of a separate common-law trespass claim. As the Lehmanns themselves describe the purpose of the Act in their brief, it is intended as a means of determining the parties' rights when a controversy has arisen but before a wrong has been committed, "and is preventative in nature." *See Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713 (1945) (describing Act as instrumentality wielded "in the interest of preventative justice," and intended as a remedy "when a real controversy has arisen and even before the wrong has actually been committed").

Further, the only apparent benefit to the Lehmanns from the declaratory judgment was the award of attorney's fees under the UDJA. *See* Tex. Civ. Prac. & Rem.Code § 37.009. We have held that simply repleading a claim as one for a declaratory judgment cannot serve as a basis for attorney's fees, since such a maneuver would abolish the American Rule and make fees "available for all parties in all cases." *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). When a claim for declaratory relief is merely "tacked onto" statutory or common-law claims that do not permit fees, allowing the UDJA to serve as a basis for fees "would violate the rule that specific provisions should prevail over general ones." *Id.* at 670. The declaratory judgment claim must do more "than merely duplicate the issues litigated" via the contract or tort claims. *Id.*

By these standards the declaratory judgment and attorney's fees awarded thereunder were not warranted. The declaratory judgment simply duplicated the issues litigated under the trespass claim by declaring, consistent with the Lehmanns' theory of trespass, that neither Bluebonnet's easements nor the pole attachment agreements between Bluebonnet and Etan gave Etan the right to place its lines on the Lehmanns' properties. We agree with the court of appeals' dissent "that declaratory relief was improper because the declarations in this case add

nothing to what would be implicit or express in a final judgment for the other remedies sought in the same action." 308 S.W.3d at 518 (Waldrop, J., dissenting).[2]

Accordingly, we grant Etan's petition for review, and without hearing oral argument, Tex.R.App. P. 59. 1, we reverse the court of appeals' judgment and render judgment that the Lehmanns take nothing on their claims.

---

**2.** Etan also challenges, on various grounds, the trial court's award of a permanent injunction and damages. These remedies are available only if liability is established under a cause of action. *See Valenzuela v. Aquino,* 853 S.W.2d 512, 514 n. 2 (Tex.1993) ("No final relief, including a permanent injunction, can be granted in a contested case without a determination of legal liability. . . ."); *Cooper v. Litton Loan Servicing, LP,* 325 S.W.3d 766, 769 (Tex.App.-Dallas 2010, pet. denied) (noting that "[a] permanent injunction is not a cause of action but an equitable remedy," and that "[t]o obtain an injunction a party must first assert a cause of action"). Because, for the reasons above, the Lehmanns' causes of action cannot be sustained, we need not reach these issues.