

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00289-CV

**FLEET OIL & GAS, LTD,**

                                        **Appellant**

 **v.**

**EOG RESOURCES, INC.,**

                                        **Appellee**

_____

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. C200800513

## MEMORANDUM OPINION

Appellant Fleet Oil & Gas, Ltd. and Appellee EOG Resources, Inc. entered into a Lease Acquisition and Participation Agreement (the Agreement) in May 2007. The relevant terms and conditions of the Agreement provide as follows:

> 1. EOG … represents that it owns 100% of those certain oil and gas leases covering approximately 108.690 net acres, more or less, out of the E. Hendricks Survey, A-328, in Johnson County, Texas (hereafter the "EOG Leases") within the Proposed Unit Area and described in Exhibit "B" attached hereto and made a part hereof, which it is making subject to this Agreement.

2. Fleet … represents that it owns or will own prior to Closing 100% of those certain oil and gas leases or oil and gas mineral rights covering approximately 495.670 net acres, more or less, out of the E. Hendricks Survey, A-328, and the T. Robert Survey A-716, all in Johnson County, Texas (hereafter the "Fleet Leases" and as to any single lease, the "Fleet Lease") within the Proposed Unit Area; said Fleet Leases being further described in Exhibit "C" attached hereto and made a part hereof; and being made subject to this Agreement.

3. Fleet desires to sell and EOG desires to purchase all of Fleet's right, title and interest in all of the Fleet Leases described in said Exhibit "C" in accordance with the terms and conditions of this Agreement. Additionally, the parties desire to explore for oil and gas on the Proposed Unit Area or on one or more units in the Proposed Unit Area in accordance with the terms and conditions hereof.

4. The Closing ("Closing") of this transaction shall occur on or before May 10, 2007, at 10:00 a.m. at EOG's offices in Fort Worth, Texas. At Closing, the following shall occur:

A) Fleet shall deliver to EOG an Assignment of all of Fleet's right, title and interest in the Fleet Leases described on said Exhibit "C" on substantially the form attached hereto as Exhibit "D-1". In those instances where Fleet or an affiliate owns oil and gas mineral rights, such rights will be leased to Fleet by the affiliate and assigned to EOG or will be leased by Fleet to EOG, on the form of PAID UP OIL AND GAS LEASE, attached hereto as Exhibit "D-2" and made a part hereof.

B) By EOG's wire transfer to Fleet, in the amount set forth below, EOG will pay to Fleet an amount equal to $3,500.00 per net leasehold acre (including roads, easements and strips and gores) covered by the Fleet Leases ("Purchase Price Payment").… Fleet's estimated net leasehold acres for the initial closing is 495.670 acres, resulting in an initial Purchase Price Payment of $1,736,845.00 [sic] ….

C) The parties will execute an AAPL 1989 Model Form Operating Agreement ("JOA"), naming EOG as Operator and a corresponding Recording Supplement on substantially the same form attached hereto as Exhibit "E" and made a part hereof. The Contract Area under the JOA shall be the land identified in the attached Exhibit "A." Regardless of the record title ownership of the leases within

the Contract Area, EOG shall own 75% working interest, and Fleet shall own 25% working interest, under the JOA.

D) The parties will execute a Pooling Declaration on substantially the same form as that attached hereto and made a part hereof as Exhibit "F[]" ….

….

12. EOG shall pay 100% of the costs [carrying Fleet to initial sales for a 25% Working Interest (herein "Fleet Carried Working Interest to Initial Sales")] to drill, complete, equip and deliver production to initial sales, or plug and abandon a dry hole, each of the first fourteen (14) horizontal wells drilled on the Contract Area, including without limitation the costs of permitting, title work, access roads, mobilization, demobilization, drilling, testing, fracing, completing, equipping, pipelines and gathering systems, wellhead or field separators, any well site or Contract Area facilities and equipment, and construction costs for gathering through the meter of the purchaser or any third party transporter to the point of sale, subject only to the fees and costs set forth in the next paragraph. All operations on the Contract Area will be conducted under the terms of the JOA in accordance with the ownership interests set out in Exhibit "A" to the JOA.

13. A. During the term of this Agreement and the attached JOA signed at Closing, EOG agrees to market Fleet's Working Interest share of gas ratably with EOG's Working Interest share of gas, unless Fleet elects to take in kind and market its gas, from time to time. With respect to EOG's marketing of Fleet's Working Interest share of gas ("Fleet's WI Gas"), EOG and Fleet agree: (i) EOG shall not charge a marketing or other fee or charge for marketing Fleet's WI Gas; (ii) for use of EOG's gathering, compression and other facilities ("EOG's System") to get the gas to the purchaser, or to a third party transporter to transport gas to the point of sale, Fleet's WI Gas shall bear its proportionate share of actual fuel costs (including gas unaccounted for) not to exceed 2%, and a fee of 28 cents per mmbtu for Fleet's WI Gas; and (iii) Fleet's WI Gas shall bear its proportionate share of the actual fees and charges to EOG from any non-affiliated, third party, under an arm's length contract, to transport, compress, treat, or handle Fleet's WI Gas from the wellhead to the point of delivery to the third party.

….

D. In the event Fleet elects to take in kind and market its gas (Fleet's WI Gas and Fleet's RI Gas) from time to time, EOG agrees that Fleet may use EOG's System for delivery to a third party purchaser or third party transporter, for the same fee as in A above, that is, Fleet shall pay EOG 28 cents per mmbtu for Fleet's WI and RI Gas moving through the EOG System, and Fleet's WI and RI Gas shall bear its proportionate share of actual fuel costs (including gas unaccounted for) not to exceed 2% in EOG's System.

….

14. EOG agrees to: (A) commence actual drilling operations on not fewer than three (3) wells on the Contract Area before November 15, 2007 ("Initial Wells"), and diligently prosecute the drilling, completion and sale of gas from such wells; and (B) to drill, frac, equip, complete, and deliver gas to initial sales, from at least twelve (12) wells, and to commence actual drilling operations on at least 2 additional wells, making a total of fourteen (14) wells (including the Initial Wells) on the Contract Area on or before December 31, 2009. In the event EOG fails to : (AA) commence actual drilling operations on not fewer than three (3) wells on the Contract Area before November 15, 2007 ("Initial Wells"), and diligently prosecute the drilling, completion and sale of gas from such wells; or (BB) to drill, frac, equip, complete, and deliver gas to initial sales, from at least twelve (12) wells, and to commence actual drilling operations on at least 2 additional wells, making a total of fourteen (14) wells (including the Initial Wells) on the Contract Area on or before December 31, 2009, Fleet's Carried Working Interest to Initial Sales in the first fourteen (14) wells, less the number of wells timely commenced and completed to initial sales as provided above, shall increase from 25% to 30%, and EOG's Working Interest shall be reduced from 75% to 70.0%.

On February 12, 2008, Fleet sent EOG a letter, stating, "This letter is to serve notice that EOG is in default under the Participation Agreement and the JOA." Fleet claimed that EOG had violated Paragraph 14 of the Agreement because it had not "diligently prosecute[d] the drilling, completion and sale of gas" from the three Initial Wells it had drilled. Fleet stated that the Agreement provided that the remedy for such a breach of contract was the increase of Fleet's working interest in the wells from

twenty-five percent to thirty percent. Fleet stated that it was less clear what the remedy would be for other alleged unauthorized pooling and drilling operations.

On February 29, 2008, EOG filed suit against Fleet in Tarrant County. Fleet filed a motion to transfer venue. The trial court sustained the motion to transfer venue and transferred the case to Johnson County, "the county in which all or a part of the real property at issue in the Lawsuit is located." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (West 2002). The trial court then granted Fleet's unopposed motion and signed an agreed order realigning the parties with Fleet as the plaintiff.

In its live pleadings at the time of trial, Fleet sought declaratory judgment that EOG was required to diligently prosecute the drilling, completion, and sale of gas from the Initial Wells and that its failure to do so resulted in an increase in Fleet's Carried Working Interest to Initial Sales in the Initial Wells from twenty-five percent to thirty percent and a decrease of EOG's Working Interest from seventy-five percent to seventy percent in such wells. Accordingly, Fleet also alleged that EOG had breached the Agreement and sought damages from EOG's underpayment of Fleet's Carried Working Interest to Initial Sales on the Initial Wells. Fleet further sought a declaratory judgment that it had a twenty-five percent working interest in the EOG Leases under Paragraph 4(C) of the Agreement and that EOG may only deduct the actual royalty burden from revenue attributable to Fleet's working interest in EOG Leases. Likewise, Fleet brought a claim for breach of contract, seeking damages resulting from EOG's breach of its obligation to pay Fleet for its twenty-five percent working interest in all EOG leases. Finally, Fleet pleaded for attorney's fees as follows:

Pursuant to §37.009 of the Texas Civil Practice & Remedies Code, Fleet seeks recovery of its costs and reasonable and necessary attorneys' fees incurred in prosecuting the foregoing declaratory judgment actions and in responding to EOG's declaratory judgment action. Pursuant to paragraph 17, of the Custom Leases, Article VII.D.5. of the JOAs covering the Contract Area, and Chapter 38 of the Texas Civil Practice & Remedies Code, Fleet is entitled to recover from EOG its reasonable attorney's fees, expert witness fees, and costs incurred in prosecuting its breach of contract claims. . . .

In its live pleadings at the time of trial, EOG sought a declaratory judgment that, under the Agreement: (1) EOG commenced actual drilling operations on not fewer than three wells on the Contract Area before November 15, 2007, and had diligently prosecuted the drilling, completion and sale of gas from such wells; (2) EOG had until December 31, 2009, to drill, frac, equip, complete, and deliver gas to initial sales, from at least twelve wells, and to commence actual drilling operations on at least two additional wells in the Contract Area; and (3) EOG's working interest in the Contract Area remained seventy-five percent. In the alternative, EOG sought damages because Fleet's actions allegedly constituted a breach of the Agreement. Finally, EOG pleaded for attorney's fees as follows: "Pursuant to Chapters 37 and 38 of the Texas Civil Practice and Remedies Code and/or other applicable law, EOG is also entitled to recover its reasonable and necessary attorneys' fees incurred in the prosecution of this action, for which EOG now sues."

The case proceeded to trial, and the trial court effectively submitted two issues to the jury: the "Diligence Issue" and the "Working Interest Issue." No damages questions were submitted to the jury because Fleet and EOG stipulated to the damages. The parties also agreed that all attorney's fees issues and costs would be submitted to

the trial court after the close of evidence presented to the jury. On the "Diligence Issue," the jury found in EOG's favor, *i.e.*, that EOG did not fail to diligently prosecute the completion and sale of gas from the Initial Wells. On the "Working Interest Issue," the jury found in Fleet's favor, *i.e.*, that Fleet and EOG agreed that Fleet would own a twenty-five percent working interest, subject only to actual burdens, in those leases contributed by EOG to the Contract Area.

Based on the jury's verdict, the parties' stipulations, the parties' motions seeking attorney's fees, and the evidence presented in support of the parties' motions seeking attorney's fees, the trial court entered its Corrected Final Judgment. The trial court declared in the Corrected Final Judgment that under the terms of the Agreement, EOG commenced actual drilling operations on not fewer than three wells on the Contract Area before November 15, 2007, and diligently prosecuted the drilling, completion, and sale of gas from such wells. Accordingly, the trial court ordered that EOG have and recover from Fleet attorney's fees in the sum of $333,400.00 for services rendered through the trial of the case and various contingent appellate attorney's fees should Fleet unsuccessfully appeal. On the other hand, the trial court also declared that under the terms of the Agreement, Fleet owns a twenty-five percent working interest, subject only to actual burdens, in those leases contributed by EOG to the Contract Area under the JOA. The trial court ordered that Fleet have and recover actual damages from EOG in the sum of $264,774.61. All other requested relief not expressly granted was denied.

The trial court subsequently made the following relevant findings of fact and conclusions of law:

## Findings of Fact

….

5.    EOG incurred attorney's fees totaling $491,400.00 through March 22, 2011.

6.    EOG incurred attorney's fees related to what has been referred to as the "Diligence Issue" in the amount of $333,400.00 through March 22, 2011.

….

9.    The difference between the total attorney's fees of $491,400.00 and the $333,400.00 EOG incurred with respect to the "Diligence Issue" was for work related to what has been referred to as the "Working Interest Issue."

10.   The "Diligence Issue" was resolved in favor of EOG by Jury question number 1.

11.   The "Working Interest Issue" was resolved in favor of Fleet by Jury question number 3.

12.   The "Diligence Issue" involved more than two times as much money as the "Working Interest Issue."

….

14.   The Joint Operating Agreements ("JOAs") admitted as Defendant Exhibit nos. 223 and 224 served as part of the basis of this case. Each JOA contains the following provision: "In the event any party is required to bring legal proceedings to enforce any financial obligation of a party hereunder, the prevailing party in such action shall be entitled to recover all court costs, expert witness costs, costs of collection, and a reasonable attorney's fee, which the lien provided for herein shall also secure."

15.   Both EOG and Fleet sought a declaration of their rights under the JOAs, and the Participation Agreement admitted as Plaintiff and Defendant Exhibit nos. 1. The Participation Agreement incorporates the form of the JOA by reference.

16. EOG's attorney's fees, costs and expenses in this case were reasonable and necessary.

17. It is equitable and just for EOG to recover its costs and necessary attorneys' fees incurred in this suit.

18. EOG is the prevailing party in this case.

19. The award of attorney's fees to EOG in the amount of $333,400.00 through March 22, 2011, and the award of contingent attorney's fees in the sum of $25,000.00 from Fleet in the event an appeal to the Court of Appeals is made by Fleet, but EOG prevails, and the sum of $7,500.00 in contingent attorney's fees if EOG prosecutes or responds to a petition for review to the Texas Supreme Court and EOG ultimately prevails, is reasonable and necessary and equitable and just.

….

**Conclusions of Law**

1. EOG is the prevailing party in this case.

2. EOG is the successful party in this case.

3. EOG's motion for attorney's fees is granted, and Fleet's motion for attorney's fees is denied.

4. EOG is entitled to recover its reasonable and necessary attorney's fees, costs and expenses incurred in this lawsuit.

This appeal ensued. In three issues, Fleet challenges each of the foregoing findings of fact and conclusions of law.

**EOG's Attorney's Fees**

We begin with Fleet's second issue in which it contends that the trial court erred in awarding EOG attorney's fees under chapter 38 of the Civil Practice and Remedies Code or the contractual fee provision in the Joint Operating Agreement (JOA).

Texas law does not allow recovery of attorney's fees unless authorized by statute or by contract. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006). Civil Practice and Remedies Code subsection 38.001(8) provides that a party "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for … an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008). Parties are free, however, to contract for a fee-recovery standard either looser or stricter than those in chapter 38 of the Civil Practice and Remedies Code. *Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). In such a case, the terms of the contract, not the statute, control the outcome of the case. *Mohican Oil & Gas, LLC v. Scorpion Exploration & Prod., Inc.*, 337 S.W.3d 310, 321 (Tex. App.—Corpus Christi 2011, pet. denied).

Article VII (Expenditures and Liability of Parties), D (Defaults and Remedies), 5 (Costs and Attorneys' Fees) of the JOA provides:

> In the event any party is required to bring legal proceedings to enforce any obligation of a party hereunder, the prevailing party in such action shall be entitled to recover all court costs, expert witness costs, costs of collection, and a reasonable attorney's fee, which the lien provided for herein shall also secure.

Fleet argues that the trial court erred in awarding EOG attorney's fees under this JOA provision because (1) EOG failed to plead for a contractual recovery of attorney's fees under the JOA; (2) EOG never raised nor prevailed on any claims that would allow a fee recovery under the JOA; and (3) EOG is not the "prevailing party" in this suit.

Rule of Civil Procedure 301 states: "The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict." TEX. R. CIV. P. 301. A

party may not be granted relief in the absence of pleadings to support that relief. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *Lile v. Smith*, 291 S.W.3d 75, 79 (Tex. App.—Texarkana 2009, no pet.). EOG's live pleading at the time of trial does not mention the JOA. EOG's specific pleading for attorney's fees is as follows: "Pursuant to Chapters 37 and 38 of the Texas Civil Practice and Remedies Code and/or other applicable law, EOG is also entitled to recover its reasonable and necessary attorneys' fees incurred in the prosecution of this action, for which EOG now sues."

EOG tries to rely on the phrase "other applicable law" in its fee request to support a fee award under the JOA. But the JOA is a *contract*, not other applicable *law*. EOG also argues that although it did not reference the JOA specifically, it made numerous references to the Agreement in its live pleading; that the Agreement states that the JOA is "attached hereto" and "made a part hereof"; and that the Agreement, together with the JOA, was attached to EOG's live pleading. EOG contends that distinguishing between the JOA and the Agreement is therefore a distinction without a difference. We disagree.

As part of the Agreement, the parties were essentially required to execute an additional, separate agreement—the JOA—at Closing. Thus, the JOA fee provision, which limits its scope to "legal proceedings to enforce any obligation of a party *hereunder*," would not cover actions arising out of the Agreement. [Emphasis added.] EOG's references to the Agreement are therefore not the same as referring to the JOA, and EOG thus failed to plead for a contractual recovery of attorney's fees under the JOA. *See, e.g., Dickey v. McComb Dev. Co.*, 115 S.W.3d 42, 47 (Tex. App.—San Antonio

2003, no pet.) ("Because the Dickeys did not request attorney[']s fees under sections 38.001 or 38.004 in their original pleadings, they have waived any claim for attorney[']s fees under this statute."). Furthermore, because EOG asserted claims based only on the Agreement, and not the JOA, EOG never raised nor prevailed on any claims that would allow recovery under the JOA.

Because the JOA's fee provision cannot be the basis for EOG's recovery of attorney's fees in this case, we turn to chapter 38. "To recover attorney's fees under section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Chapter 38 does not provide for the recovery of attorney's fees by a party who only defends against a plaintiff's or counter-plaintiff's contract claim and presents no contract claim of its own. *See Polansky v. Berenji*, 393 S.W.3d 362, 368 (Tex. App.—Austin 2012, no pet.); *Energen Res. MAQ, Inc. v. Dalbosco*, 23 S.W.3d 551, 558 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

Fleet argues that EOG is not entitled to attorney's fees under chapter 38 because it did not recover damages in the trial court's Corrected Final Judgment. Relying on *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 797 (Tex. App.—Houston [14th Dist.] 2001, no pet.), EOG responds that although it did not recover damages, it did recover something of value because the declaration it received had a value exceeding $2,000,000. We agree with Fleet.

The "Diligence Issue" submitted in the jury charge was based on Fleet's breach of contract claim. The jury found in EOG's favor, *i.e.*, that EOG did not fail to diligently

prosecute the completion and sale of gas from the Initial Wells. Based on this finding, the trial court declared in the Corrected Final Judgment that under the terms of the Agreement, EOG commenced actual drilling operations on not fewer than three wells on the Contract Area before November 15, 2007, and diligently prosecuted the drilling, completion, and sale of gas from such wells. In other words, EOG obtained a declaration that it did not breach that part of the Agreement. It recovered no damages or other equitable relief (*e.g.*, injunctive relief or specific performance) as a result of this status quo declaration. EOG essentially defended against Fleet's contract claim concerning diligent prosecution, and chapter 38 does not provide for the recovery of attorney's fees by a party who only defends against a contract claim. *See Polansky*, 393 S.W.3d at 368; *Energen Res. MAQ, Inc.*, 23 S.W.3d at 558.

In light of the foregoing, the trial court erred in its findings of fact and conclusions of law to the extent they support awarding EOG attorney's fees under chapter 38 of the Civil Practice and Remedies Code or the contractual fee provision in the JOA. We sustain Fleet's second issue.

We now turn to Fleet's first issue in which it contends that this case involves a title dispute and that the trial court therefore erred in awarding EOG attorney's fees under chapter 37 of the Civil Practice and Remedies Code (the Uniform Declaratory Judgments Act).

The Texas Supreme Court has held that although declaratory relief under the UDJA may be proper in a particular case, a party's use of the UDJA merely as a "vehicle to obtain otherwise impermissible attorney's fees" is improper. *MBM Fin. Corp. v.*

Fleet Oil & Gas, Ltd. v. EOG Res., Inc. Page 13

*Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). The declaratory judgment claim must therefore do more "than merely duplicate the issues litigated" via the contract or tort claims. *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (quoting *MBM Fin. Corp.*, 292 S.W.3d at 670).

We just concluded above that the declaration in EOG's favor was a declaration that EOG did not breach the Agreement by failing to diligently prosecute the completion and sale of gas from the Initial Wells; that EOG essentially defended against Fleet's contract claim regarding diligent prosecution; and that chapter 38 therefore did not provide for the recovery of attorney's fees by EOG. Because EOG's declaratory judgment claim merely duplicates the issues litigated on the diligent-prosecution contract claim, EOG is not entitled to attorney's fees based on its declaratory judgment claim either. *See MBM Fin. Corp.*, 292 S.W.3d at 669-70; *see also Etan Indus.*, 359 S.W.3d at 624 ("[The UDJA] is intended as a means of determining the parties' rights when a controversy has arisen but before a wrong has been committed, 'and is preventative in nature.'").

We conclude that the trial court erred in its findings of fact and conclusions of law to the extent they support awarding EOG attorney's fees under chapter 37 of the Civil Practice and Remedies Code (the UDJA). We sustain Fleet's first issue to the extent it contends that the trial court erred in awarding EOG attorney's fees under chapter 37 of the Civil Practice and Remedies Code (the UDJA).[1]

---

[1] We thus need not reach Fleet's argument that this case involves a title dispute.

**Fleet's Attorney's Fees**

In its third issue, Fleet contends that the trial court erred in refusing to award it any attorney's fees despite the fact that it prevailed on an affirmative claim for damages for which attorney's fees are recoverable under chapter 38 of the Civil Practice and Remedies Code and the fact that it offered uncontroverted evidence of its reasonable attorney's fees.

EOG first responds that this issue contradicts Fleet's earlier position that attorney's fees are not recoverable because the parties' dispute amounted in substance to a suit to quiet title. In other words, EOG argues that if we were to reverse its award of fees because it is a title dispute, then Fleet would also be precluded from recovering any fees. We, however, sustained Fleet's first issue not because we agreed that this case involves a title dispute, but because EOG's declaratory judgment claim merely duplicates the issues litigated on the diligent-prosecution contract claim on which EOG was not entitled to recover attorney's fees.

We now turn to whether the trial court erred in refusing to award Fleet any attorney's fees under chapter 38 of the Civil Practice and Remedies Code. As stated above, "[t]o recover attorney's fees under section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc.*, 951 S.W.2d at 390.

Fleet brought a claim against EOG for breach of contract, claiming that EOG breached the Agreement by underpaying it because, contrary to EOG's alleged positions, Fleet had a twenty-five percent working interest in the EOG Leases based on

Paragraph 4(C) of the Agreement and because EOG was allowed to deduct only the actual lease burdens on EOG Leases under the Agreement. The jury found that Fleet and EOG agreed that Fleet would own a twenty-five percent working interest, subject only to actual burdens, in those leases contributed by EOG to the Contract Area. Accordingly, the trial court ordered in the Corrected Final Judgment that Fleet have and recover actual damages from EOG in the sum of $264,774.61. Thus, Fleet prevailed on a cause of action for which attorney's fees are recoverable (breach of contract) and recovered damages—both of the requirements to recover attorney's fees under chapter 38.

EOG nevertheless contends that even if the trial court erred in concluding that it was the prevailing party, such error was harmless. EOG argues that even if Fleet was the prevailing party, Fleet waived its right to recover attorney's fees because it failed to segregate. However, assuming without deciding that segregation was required, the matter would still be remanded because evidence of unsegregated attorney's fees is more than a scintilla of evidence of segregated attorney's fees. *Chapa*, 212 S.W.3d at 314; *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991); *Aetna Cas. & Sur. v. Wild*, 944 S.W.2d 37, 41 (Tex. App.—Amarillo 1997, writ denied). The trial court's error in concluding that EOG was the prevailing party was, therefore, not harmless.

We conclude that the trial court erred in its findings of fact and conclusions of law to the extent they supported refusing to award Fleet any attorney's fees. We sustain Fleet's third issue.

## Conclusion

We reverse and render judgment that EOG take nothing on its claim for attorney's fees. We reverse the trial court's Corrected Final Judgment to the extent that it does not award Fleet any attorney's fees and remand this cause to the trial court for further proceedings consistent with this opinion.


REX D. DAVIS
Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray concurs. A separate opinion will not issue.)
Reversed and rendered in part; reversed and remanded in part
Opinion delivered and filed May 22, 2014
[CV06]