

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00347-CV

---

**TEXAS DISPOSAL SYSTEMS, INC., TEXAS LANDFILL MANAGEMENT, LLC, TDS EXCAVATION SERVICES, LLC (N/K/A TDS ENVIRONMENTAL SERVICES,LLC), TEXAS DISPOSAL SYSTEMS LANDFILL, INC., TDS LAND MANAGEMENT, LP AND THE AUSTIN SAVANNA, LLC, APPELLANTS**

V.

**ALAMO ADVISORS, LP, APPELLEE**

---

On Appeal from the 126th District Court
Travis County, Texas
Trial Court No. D-1-GN-23-004382[1], Honorable Karin Crump, Presiding

---

July 8, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

This appeal arises out of a minority shareholder's sharing of information with his advisors to value his interest in a family-owned business. The advisors were sued for trade secret misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA").

---

[1] This matter was severed from the original cause number of D-1-GN-21-001722, in the 126th Judicial District Court, Travis County, Texas.

Appellants, Texas Disposal Systems, Inc.; Texas Landfill Management, LLC; Texas Disposal Systems Landfill, Inc.; TDS Excavation Services, LLC, n/k/a TDS Environmental Services, LLC; TDS Land management, LP; and The Austin Savanna, LLC (collectively "TDS") appeal a no-evidence summary judgment on their claim for trade secret misappropriation granted in favor of Appellee, Alamo Advisors, LP ("Alamo"). TDS complains the trial court erred in granting the summary judgment for the following reasons: (1) Alamo failed to challenge each potential ground for a claim of trade secret misappropriation; (2) TDS presented evidence raising a fact question regarding Alamo's misappropriation; (3) TDS presented evidence Alamo used its trade secrets by refusing to return them; and (4) the trial court erred in granting summary judgment on its application for injunctive relief. We affirm.[2]

## BACKGROUND

Two brothers, James "Jimmy" Gregory and Bobby Gregory, founded TDS in 1978 as a waste disposal business. Throughout its history, TDS had to develop trade secrets regarding the acquisition of clients, how to bid effectively on jobs, and how and where to contract to dispose of its clients' waste in order to remain competitive and profitable. In the hands of its competitors, this information could cause TDS to lose business and revenue.

In 2017, Jimmy decided he wanted to retire from TDS and cash-in his shares. However, TDS is privately owned and there was no market in which Jimmy could sell his

---

[2] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between the precedent of the Third Court of Appeals and this Court on any issue, this appeal will be decided in accordance with the precedent of the Third Court of Appeals. TEX. R. APP. P. 41.3.

shares freely, a common problem with privately-held entities. To complicate matters, Jimmy was a minority shareholder, owning only 20% of the TDS companies, whereas his brother Bobby owns the vast majority at 80%. In an effort to better understand the value of his shares and assist him in negotiating a buyout, Jimmy contracted with San Antonio–based accounting and financial planning firm Alamo Advisors, LP. Jimmy also sought tax advice from Alamo regarding estate planning and gifts.

As a requirement of the engagement, Jimmy executed a non-disclosure agreement which required Alamo to keep any information received confidential. Jimmy then gave Alamo financial information going back a decade. During his negotiations with TDS, Jimmy admitted to Bobby he gave TDS's information to his advisors, and he expressed his desire for TDS or a third-party to buy him out of his ownership stake. In 2019, after learning of the disclosure and in an effort to maintain control of the disclosed information, TDS requested Alamo execute a separate non-disclosure agreement with TDS, which Alamo did. Jimmy then engaged in negotiations with TDS, aided by Alamo.

By 2021, negotiations between Jimmy and TDS broke down, and TDS sent letters to Alamo requesting the return of the information given to it by Jimmy. TDS claimed Jimmy gave the information without authority, and he had executed a non-disclosure agreement with TDS which prevented him from transmitting the information to third parties. Jimmy's attorney sent a formal request under the Texas Business Organizations Code for the same information TDS claimed was given without authority. TDS refused to give the information requested, and Alamo did not return the information already given to it by Jimmy.

Jimmy sued his brother and TDS for their failure to give access to the financial documents formally requested under the Business Organizations Code. TDS counterclaimed against Jimmy for his disclosure of TDS's financial information to Alamo. TDS also sued Alamo as a third-party defendant for trade secret misappropriation under the TUTSA and for conversion of the trade secrets. After filing its answer, Alamo moved for a no-evidence summary judgment. The trial court granted Alamo's motion and summarily dismissed all of TDS's claims against it. Under an agreed motion to sever the judgment from the main cause involving Jimmy, the judgments became final and appealable.

## STANDARD OF REVIEW

We review the rendition of summary judgments de novo. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). Under a no-evidence motion for summary judgment, the movant is required to identify the specific elements of each of the nonmovant's causes of action for which there is no evidence. TEX. R. CIV. P. 166a(i). Once the movant identifies the elements lacking evidence, the burden shifts to the nonmovant to produce more than a scintilla of evidence in support of each such cause of action to survive summary judgment. *Id.*; *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) (citations omitted). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc.*, 118 S.W.3d at 751 (quoting *Merrell Dow*

4

*Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). When the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

## APPLICABLE LAW

The TUTSA is codified in Chapter 134A of the Texas Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001–134A.008. Under the Act, the term "trade secret" is broadly defined to be information which:

> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

§ 134A.002(6).

> The following acts are defined as "misappropriation" under the Act:
>
> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> > (i) used improper means to acquire knowledge of the trade secret;
> >
> > (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
> >
> > > (a) derived from or through a person who used improper means to acquire the trade secret;

5

(b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that the trade secret was a trade secret and that knowledge of the trade secret had been acquired by accident or mistake.

§ 134A.002(3).

The TUTSA allows injunctive relief for actual or threatened misappropriation, and damages are available in lieu of or in addition to injunctive relief. §§ 134A.003, 134A.004. The TUTSA displaces "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret" with the exceptions of:

(1) contractual remedies, whether or not based upon misappropriation of a trade secret;

(2) other civil remedies that are not based upon misappropriation of a trade secret; or

(3) criminal remedies, whether or not based upon misappropriation of a trade secret.

§ 134A.007(a), (b).

The TUTSA also controls over conflicts with the Texas Rules of Civil Procedure. § 134A.007(c).

**ANALYSIS**

**ISSUE ONE—ALAMO DID NOT ATTACK ALL METHODS OF MISAPPROPRIATION**

For its first issue, TDS argues the trial court erred by granting Alamo's motion for no-evidence summary judgment because Alamo did not attack all of the methods of "misappropriation" defined by the TUTSA. Alamo attacked TDS's misappropriation claim by specifically stating there was no evidence Alamo knew or had reason to know the alleged trade secrets it received were acquired by improper means. § 134A.002(3)(A). Without citing any authority, TDS urges because there are additional methods by which a party can commit misappropriation under the Act, the trial court could not dismiss its trade secret misappropriation claim. We disagree.

In 2013, the TUTSA displaced common law misappropriation as a cause of action. § 134A.007(a). Under TUTSA, the elements of trade secret misappropriation are:

(1) the plaintiff owns a trade secret;

(2) the defendant misappropriated the trade secret; and

(3) an injury if the plaintiff seeks damages.

§§ 134A.002(1), (3), (6), 134A.004(a).

Thus, a no-evidence motion for summary judgment attacking a TUTSA claim need only assert there is no evidence of misappropriation to satisfy the requirement to specify the elements lacking evidence. TEX. R. CIV. P. 166a(i). However, Alamo specifically argued:

[TDS] in this case has no evidence that [Alamo] acquired the information through improper means . . . [TDS] in this case has no evidence that [Alamo] knew or should have known the [trade secret] was obtained through improper means.[3]

This directly challenged the factual allegations of misappropriations in TDS's live pleadings:

[James Gregory] and [Jennifer Gregory] . . . misappropriated the TDS Companies' Confidential Information by secretly taking and disclosing it to [Alamo], [Katzen Marshall], and Raymond James. [Alamo], [Katzen Marshall], and Raymond James have misappropriated the [Confidential Information] by obtaining it from James Gregory and/or Jennifer Gregory when they knew or had reason to know the Confidential Information has been obtained by improper means and further, by their refusal to return the misappropriated [trade secrets] to [TDS].

A party may not receive more relief than pleaded for, and the judgment must conform to the pleadings. *Stoner v. Thompson*, 578 S.W.2d 679, 682–83 (Tex. 1979). TDS's pleadings described only one method of misappropriation. § 134A.002(3)(A). Because TDS's pleadings did not allege any other method of misappropriation, it was not entitled to relief based upon any other theory of misappropriation. Once Alamo addressed the theory of misappropriation actually pleaded, TDS was left with no other right to relief and the controversy was terminated between the parties. Therefore, we hold Alamo did not have to address each method of misappropriation delineated in the TUTSA in order to successfully move for its no-evidence summary judgment.

---

[3] As an additional ground for summary judgment, Alamo also argued there was no evidence of damages. TDS correctly points out it was not required to present evidence of damages because it only sought injunctive relief. We agree with TDS. However, this argument is moot because the trial court could have granted summary judgment solely based upon the absence of evidence of misappropriation. *JLB Builders, L.L.C.*, 622 S.W.3d at 864 (a party may obtain a no-evidence summary judgment when there is no evidence of one or more essential elements of a claim).

TDS makes an additional argument that its recital of "by their refusal to return the misappropriated [trade secrets]" left the door open to proving other methods of misappropriation at trial. Implicitly, it argues trade secret information in the possession of a party *becomes* misappropriation *per se* once the owner requests the return of the material. However, only "misappropriation" as defined by the TUTSA is actionable, and we must examine the statute's language in order to determine whether, as TDS proposes, the refusal to return trade secret information qualifies as "misappropriation" under the Act.

We review issues of statutory construction de novo. *Silguero v. CSL Plasma*, 579 S.W.3d 53, 59 (Tex. 2019) (citations omitted). In construing statutes, our primary objective is to give effect to the Legislature's intent. *Id.* In interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole. *Id.* A statute's plain language is the most reliable guide to the Legislature's intent. *Id.* The statutory terms bear their common, ordinary meaning, unless the text provides a different meaning or the common meaning leads to an absurd result. *Id.* If the statute's plain language is unambiguous, we interpret its plain meaning, presuming that the Legislature intended for each of the statute's words to have a purpose and that the Legislature purposefully omitted words it did not include. *Id.*

There is nothing in the language of the TUTSA which indicates the refusal to return trade secret information is a method of misappropriation. Broadly, the only two methods of misappropriation under the Act are: (1) acquisition of the trade secret from someone who improperly acquires the trade secret; and (2) use or disclosure of the trade secret without consent of the owner. § 134A.002(3)(A), (B). Examining the plain language of the statute, once a party comes into possession of a trade secret without improper means,

9

it must then use or disclose the trade secret without consent to constitute "misappropriation" under the TUTSA. *Id.*; *see also* §§ 134A.003, 134A.004. The refusal to return trade secrets does not *ipso facto* become misappropriation under the Act. Therefore, Alamo's refusal to return trade secrets was not "misappropriation" under the Act, and Alamo did not have to address this "additional ground" to successfully move for a no-evidence summary judgment.

For the foregoing reasons, we hold Alamo was not required to attack every possible method of misappropriation to successfully move for a no-evidence summary judgment. We overrule TDS's first issue.

**ISSUE TWO—EVIDENCE RAISING A FACT ISSUE OF MISAPPROPRIATION**

TDS's second issue complains it presented sufficient evidence Alamo knew or should have known the information it received from Jimmy was acquired by improper means. § 134A.002(3)(A). As proof of Alamo's knowledge, TDS points to two particular pieces of evidence:

- the 2017 non-disclosure agreement between Alamo and Jimmy; and

- the affidavit of Tom Mistler, TDS's COO and CFO, stating in 2019, during a meeting to discuss the sale of Jimmy's shares, TDS informed Jimmy and Bob Johnson of Alamo that Jimmy was "under fiduciary and contractual obligations to maintain the confidentiality" of the financial records Jimmy disclosed to Alamo.

With respect to the 2017 non-disclosure agreement, TDS argues, because Jimmy executed the agreement in his individual capacity, Alamo should have known the information it received was acquired through improper means. However, Bobby's affidavit and TDS's pleadings admit Jimmy was a director and manager of the various TDS entities

10

as well as a 20% shareholder in 2017.[4]  A governing person and an owner of a business entity is entitled to access the financial information of the entity.  *See* TEX. BUS. ORGS. CODE ANN. §§ 3.152, 3.153.  Jimmy, as both a governing person and an owner, had a statutory right to the books and records of TDS, and it was reasonable for Alamo to assume Jimmy's possession of confidential information was authorized.  The mere fact Jimmy signed the non-disclosure agreement in his individual capacity, including his seeking advisory services for the sale of his shares, did not place Alamo on any obvious notice the information it received was improperly acquired.  The capacity in which Jimmy signed the non-disclosure agreement created a mere surmise or suspicion of Alamo's knowledge about the method by which he acquired the information.  The non-disclosure agreement is no more than a scintilla of evidence demonstrating knowledge on the part of Alamo regarding the manner in which Jimmy acquired the information he shared with Alamo.[5]

The second piece of evidence, the verbal notice of Jimmy's fiduciary and contractual obligations, occurred two years *after* Alamo had already received the information from Jimmy in 2017.  The plain language of the statute indicates the relevant knowledge is at the time of the "acquisition," not after the party receives notice at a later date.  § 134A.002(3)(A); *Silguero*, 579 S.W.3d at 59.[6]  Accordingly, the fact Alamo's representative was given information in 2019 indicating the trade secrets may have been

---

[4] Bobby's affidavit was attached to TDS's response to Alamo's motion.

[5] There is a further question of whether Alamo's receipt of the information from Jimmy was in fact "acquisition of a trade secret" when Alamo disclaimed all ownership of the trade secret under the non-disclosure agreement with Jimmy.

[6] *See also* § 134A.002(3)(B)(ii) (misappropriation actionable when actor "at the time of disclosure or use, knew or had reason to know" the trade secret was acquired through improper means).

acquired improperly by Jimmy does not transform Alamo's "acquisition" two years prior in 2017 into misappropriation.[7]

Because TDS presented no more than a scintilla of evidence Alamo knew or had reason to know Jimmy acquired the alleged trade secrets by improper means, the trial court did not err in granting Alamo's no-evidence motion for summary judgment. TDS's second issue is overruled.

### ISSUE THREE—ALAMO'S REFUSAL TO RETURN TDS'S TRADE SECRETS

TDS's third issue claims Alamo "misappropriated" its trade secrets by refusing to return them on demand. Alamo did not deny or controvert this assertion by TDS. But, as we discussed *supra*, the refusal to return trade secrets upon demand does not constitute "misappropriation" under the TUTSA. Accordingly, we overrule TDS's third issue.

### ISSUE FOUR—TDS'S APPLICATION FOR INJUNCTIVE RELIEF

In its fourth and final issue, TDS complains the trial court improperly disposed of its application for a temporary and permanent injunction. TDS advances two arguments on this issue: (1) the TUTSA permits injunctive relief for threatened misappropriation, and Alamo did not move for summary judgment based on no evidence of a threatened misappropriation; and (2) even if Alamo had properly challenged the "threatened misappropriation" element for injunctive relief, a fact issue was raised by the evidence of

---

[7] The possession of the information may nonetheless be the subject of a conversion claim, which we note TDS asserted and then apparently nonsuited. TDS is not appealing the summary judgment disposing of its conversion claim.

Alamo's refusal to return TDS's trade secrets. As we discuss below, the disposition of its misappropriation claim rendered TDS's request for injunctive relief moot.

The TUTSA allows injunctive relief for "[a]ctual or threatened misappropriation." § 134A.003(a). TDS requested both a temporary injunction and a permanent injunction in its live petition.[8] Injunctive relief is a request for equitable relief not a cause of action. *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied), *accord Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011); *see also Cavin v. Abbott*, 613 S.W.3d 168, 176 n.4 (Tex. App.—Austin 2020, pet. denied) (Goodwin, J., concurring); *compare JLMH Invs., LLC v. Family Dollar Stores of Tex., LLC*, No. 02-23-00233-CV, 2024 Tex. App. LEXIS 4143, at *19–20 (Tex. App.—Fort Worth June 13, 2024, no pet. h.) (recognizing standalone right to abate nuisance by injunction even if the underlying claim has been dismissed). A permanent injunction is only available if liability is established under a cause of action. *Cooper*, 325 S.W.3d at 769–70; *Lehmann*, 359 S.W.3d at 625 n.2. TDS requested injunctive relief against Alamo based upon Alamo's alleged misappropriation of its trade secrets. Therefore, Alamo was only required to specifically address the misappropriation cause of action upon which TDS's request for injunction was based, not the request for injunction itself. *Id.* As discussed above, the trial court did not err in granting a no-evidence summary judgment on TDS's misappropriation claim. With no viable claim to support its request for injunctive relief, TDS's request for an injunction was rendered moot.

---

[8] Insofar as TDS complains about the denial of the temporary injunction, the record does not demonstrate the trial court conducted a hearing or ruled upon TDS's application for a temporary injunction, and error was not preserved on this issue. TEX. R. APP. P. 33.1(a). We therefore address only TDS's application for a permanent injunction.

The trial court did not err in disposing of TDS's application for injunction.  Its fourth issue is overruled.

## CONCLUSION

We hold the trial court properly granted Alamo's motion for no-evidence summary judgment.  The trial court's judgment is affirmed.


Alex Yarbrough
Justice

14