

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00348-CV

_____

**TEXAS DISPOSAL SYSTEMS, INC., TEXAS LANDFILL MANAGEMENT, LLC, TDS EXCAVATION SERVICES, LLC (N/K/A TDS ENVIRONMENTAL SERVICES,LLC), TEXAS DISPOSAL SYSTEMS LANDFILL, INC., TDS LAND MANAGEMENT, LP AND THE AUSTIN SAVANNA, LLC, APPELLANTS**

V.

**KATZEN MARSHALL & ASSOCIATES, INC., APPELLEE**

_____

On Appeal from the 126th District Court
Travis County, Texas
Trial Court No. D-1-GN-23-004382[1], Honorable Karin Crump, Presiding

_____

July 8, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

This appeal arises out of a minority shareholder's sharing of information with his advisors to value his interest in a family-owned business. The advisors were sued for trade secret misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA").

---

[1] This matter was severed from the original cause number of D-1-GN-21-001722, in the 126th Judicial District Court, Travis County, Texas.

Appellants, Texas Disposal Systems, Inc.; Texas Landfill Management, LLC; Texas Disposal Systems Landfill, Inc.; TDS Excavation Services, LLC, n/k/a TDS Environmental Services, LLC; TDS Land Management, LP; and The Austin Savanna, LLC (collectively "TDS") appeal a summary judgment on their trade secret misappropriation claim granted in favor of Appellee, Katzen Marshall & Associates, Inc. ("Katzen Marshall"). TDS complains the trial court erred in granting the summary judgment and presents the following issues for our review: (1) TDS was not required to present evidence of every method of misappropriation challenged by Katzen Marshall; (2) TDS presented more than a scintilla of evidence of misappropriation; (3) TDS was not required to show it sustained damages to support its claim for injunctive relief; (4) fact issues precluded summary judgment on its application for injunction; (5) Katzen Marshall's traditional motion for summary judgment failed to negate an essential element of TDS's claim; (6) the Uniform Standards of Professional Appraisal Practice ("USPAP") is not a valid defense against misappropriation. We affirm.[2]

## BACKGROUND

Two brothers, James "Jimmy" Gregory and Bobby Gregory, founded TDS in 1978 as a waste disposal business. Throughout its history, TDS had to develop trade secrets regarding the acquisition of clients, how to bid effectively on jobs, and how and where to contract to dispose of its clients' waste in order to remain competitive and profitable. In

---

[2] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between the precedent of the Third Court of Appeals and this Court on any issue, this appeal will be decided in accordance with the precedent of the Third Court of Appeals. TEX. R. APP. P. 41.3.

the hands of its competitors, this information could cause TDS to lose business and revenue.

In 2016, Jimmy's attorney contacted Katzen Marshall in order to have Jimmy's business interests valued, including his shares in TDS. According to Katzen Marshall, it was told the valuation would be used for estate and gift planning purposes. As a requirement of the engagement, Jimmy executed a non-disclosure agreement with Katzen Marshall, which required Katzen Marshall to keep any information it received confidential. Jimmy executed the non-disclosure agreement on behalf of TDS in his capacity as vice president. Jimmy then gave Katzen Marshall sixteen years' worth of TDS's financial documentation to perform the appraisal, which Katzen Marshall used to create two appraisal reports. In 2019, Jimmy began negotiations with Bobby and TDS to be bought out of his ownership stake in TDS, of which he was a minority owner at 20% while Bobby owned 80%. During his negotiations with TDS, Jimmy admitted to his brother Bobby he gave TDS's financial documents to his advisors, including Katzen Marshall. TDS did not take any immediate action against Katzen Marshall, despite its possession of confidential financial information.

By 2021, negotiations between Jimmy and Bobby and TDS broke down, and TDS sent a letter to Katzen Marshall demanding the return of the information given to it by Jimmy. TDS claimed Jimmy gave the information without authority, and Jimmy's non-disclosure agreement with TDS prevented him from transmitting the information to third-parties. In response, Jimmy's attorney sent a formal request under the Texas Business Organizations Code for the same information TDS claimed was given without authority.

TDS refused to give the information requested, and Katzen Marshall did not return the information it previously received from Jimmy.

The impasse resulted in Jimmy suing his brother and TDS for their failure to give access to the financial documents formally requested under the Business Organizations Code. TDS counterclaimed against Jimmy and sued Katzen Marshall as a third-party defendant for trade secret misappropriation and conversion. After filing its answer, Katzen Marshall moved for a mixed no-evidence and traditional summary judgment. The trial court granted Katzen Marshall's motion and summarily dismissed all of TDS's claims against it. Katzen Marshall then moved to sever its judgment from the main cause involving Jimmy, and the judgment became final and appealable.

### STANDARD OF REVIEW

We review grants of summary judgment de novo. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). In our review we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor. *Id.* (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

Under a no-evidence motion for summary judgment, the movant is required to identify the specific element of each of the nonmovant's causes of action for which there is no evidence. TEX. R. CIV. P. 166a(i). Once the movant identifies the elements lacking evidence, the burden shifts to the nonmovant to produce more than a scintilla of evidence in support of each such cause of action to survive summary judgment. *Id.*; *JLB Builders,*

4

*L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) (citations omitted).  Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact.  *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

When a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion.  *First United Pentecostal Church of Beaumont*, 514 S.W.3d at 219–20 (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).  If the non-movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails.  *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).  Thus, we first review each claim under the no-evidence standard.  *Id.*  Any claims that survive the no-evidence review will then be reviewed under the traditional standard.  *Id.*  When the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious.  *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

The TUTSA is codified in Chapter 134A of the Texas Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001–134A.008. Under the Act, the term "trade secret" is broadly defined to be information which:

(A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

§ 134A.002(6).

The following acts are defined as "misappropriation" under the Act:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

(a) derived from or through a person who used improper means to acquire the trade secret;

(b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret; or

6

(iii) before a material change of the position of the person, knew or had reason to know that the trade secret was a trade secret and that knowledge of the trade secret had been acquired by accident or mistake.

§ 134A.002(3).

The TUTSA allows injunctive relief for actual or threatened misappropriation. § 134A.003. Damages are also available in lieu of and in addition to injunctive relief. § 134A.004. The TUTSA displaces "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret" with the exceptions of:

(1) contractual remedies, whether or not based upon misappropriation of a trade secret;

(2) other civil remedies that are not based upon misappropriation of a trade secret; or

(3) criminal remedies, whether or not based upon misappropriation of a trade secret.

§ 134A.007(a), (b).

The TUTSA also controls over conflicts with the Texas Rules of Civil Procedure. § 134A.007(c).

## ANALYSIS

### ISSUES ONE AND TWO—EVIDENCE OF MISAPPROPRIATION

TDS argues for its first issue it was not required to present evidence of more than one method of misappropriation delineated in Katzen Marshall's motion. Its second issue

argues it presented more than a scintilla of evidence of Katzen Marshall's misappropriation to preclude a no-evidence summary judgment. We address TDS's second issue first because it is dispositive of the other issues.

The elements of a cause of action under the TUTSA are:

(1) the plaintiff owns a trade secret;

(2) the defendant misappropriated the trade secret; and

(3) if the plaintiff seeks damages, an injury.

§§ 134A.002(1), (3), (6), 134A.004(a).

Katzen Marshall moved for summary judgment on TDS's misappropriation claim based on a lack of evidence it misappropriated a trade secret. It specifically argued there was no evidence of the following:

(1) Katzen Marshall acquired any trade secret through improper means;

(2) the trade secret was used without authorization;

(3) TDS sustained damages as a result of any act or omission of Katzen Marshall; and

(4) Katzen Marshall knew or should have known the confidential information was obtained through improper means.

In response, TDS presented the trial court with the following evidence:

- handwritten "field notes" taken by David Katzen, one of Katzen Marshall's principals, which noted:

  ➢ Jimmy "does not want Bobby to know";

  ➢ "confidentiality [was of] utmost concern";

8

> ➤ TDS "never [gives[ out a set of [financial statements]";

> ➤ Bobby did "not want the stock valued"; and

- excerpts from the deposition testimony of David Katzen in which he testified Jimmy told him Bobby was "particularly sensitive to the divulgence[sic] of information [to third parties] because he was worried it would get out to competitors[.]"

TDS argues the above is more than a scintilla of evidence Katzen Marshall knew or should have known Jimmy acquired TDS's information through improper means. *See* § 134A.002(3)(A). It urges Katzen Marshall, having notice of Bobby's particular "sensitivity" to the disclosure TDS's information placed Katzen Marshall on notice Jimmy did not have the authority to give Katzen Marshall the TDS documents. However, Bobby's personal views did not automatically negate Jimmy's independent authority to access the information.

Jimmy signed the non-disclosure agreement with Katzen Marshall as vice president of TDS. An affidavit executed by Bobby and attached to TDS's response also admitted Jimmy was not only a director and manager of the various TDS entities, but a 20% shareholder. A governing person and an owner of a business entity is entitled to access the financial books and records of the entity. *See* TEX. BUS. ORGS. CODE ANN. §§ 3.152, 3.153. Jimmy, as both a governing person and an owner of TDS, had a statutory right to the books and records of TDS, and it was reasonable for Katzen Marshall to assume Jimmy's possession of confidential information was authorized. The evidence of Katzen Marshall's knowledge of Bobby's apprehension about the disclosure of information presents no more than a surmise it knew Jimmy inappropriately acquired the TDS records, and thus presents no more than a scintilla of evidence of misappropriation.

9

Nonetheless, TDS also argues it presented sufficient evidence Katzen Marshall committed misappropriation through the use of its trade secrets. TDS identifies the following actions by Katzen Marshall are evidence of "use" of its trade secret information and "misappropriation" under the Act:

(a) use of its financial information in performing the appraisal requested by Jimmy; and

(b) subsequently refusing to return the information to TDS upon demand.

To determine whether these acts constituted "use" of a trade secret, we must necessarily interpret the TUTSA. § 134A.002(3)(B). We review issues of statutory construction de novo. *Silguero v. CSL Plasma*, 579 S.W.3d 53, 59 (Tex. 2019) (citations omitted). In construing statutes, our primary objective is to give effect to the Legislature's intent. *Id*. In interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole. *Id*. A statute's plain language is the most reliable guide to the Legislature's intent. *Id*. The statutory terms bear their common, ordinary meaning, unless the text provides a different meaning or the common meaning leads to an absurd result. *Id*. If the statute's plain language is unambiguous, we interpret its plain meaning, presuming that the Legislature intended for each of the statute's words to have a purpose and that the Legislature purposefully omitted words it did not include. *Id*.

TDS first urges Katzen Marshall's use of its information in creating an appraisal report constituted "use" under § 134A.002(3). It argues "courts have interpreted ["use"] broadly to include any commercial use."[3] Because Katzen Marshall charged a fee for

---

[3] In support of this proposition, TDS only cites to *Sears Authorized Hometown Stores, L.L.C. v. Y&O WF, L.L.C.*, No. 7:18-CV-00083-O-BP, 2018 U.S. Dist. LEXIS 212016, at *4 (N.D. Tex. Nov. 29, 2018), report and recommendation adopted, No. 7:18-CV-00083-O-BP, 2018 U.S. Dist. LEXIS 211514 (N.D. Tex.

10

creating the report which utilized its information, according to TDS's logic, Katzen Marshall's use of the information was a commercial "use" necessarily resulting in misappropriation under the TUTSA. We disagree.

In *Sw. Energy Prod. Co. v. Berry-Helfand*, the Texas Supreme Court dealt with the issue of when a cause of action for misappropriation of trade secrets accrued in a dispute between an oil and gas operator and a reservoir engineer. 491 S.W.3d 699, 721–22 (Tex. 2016). The Court determined "[a] cause of action for trade-secret misappropriation accrues when the trade secret is actually used," and "[u]se of [a] trade secret means commercial use by which the offending party seeks to profit from the use of the secret." *Id.* The "commercial use" of the trade secrets occurred in *Berry-Helfand* when the oil and gas operator drilled successful wells for its own profit in locations which were trade secrets kept by the reservoir engineer. *Id.* at 709. For there to be a commercial "use" under the TUTSA, the trade secret must be exploited for its inherent value, which, in the case of *Berry-Helfand* meant the extraction of the valuable oil and gas in the trade secret locations. *Id.* This is further supported by the text of the TUTSA, which defines "trade secret" as information which "derives **independent economic value** . . . from not being generally known . . . ." § 134A.002(6) (emphasis added). Viewing the term "use" in the context of the definition of "trade secret," misappropriation occurs when the trade secret is exploited for its "independent economic value" to gain profits or advantage over the owner of the trade secret. Undisputed in this case is that Katzen Marshall served only in an advisory capacity to Jimmy, not as a competitor to TDS; it did not utilize the information

---

Dec. 17, 2018)). We note the case is a US District Court ruling and, although perhaps persuasive authority, is not binding upon this Court.

given by Jimmy for any other purpose than to provide the appraisal service it was hired to perform. Katzen Marshall merely analyzed the alleged trade secret information as part of its professional service. Though it collected a fee, the fee was derived from Katzen Marshall's expertise as a business appraiser, not for the "independent economic value" inherent to the trade secrets it used to create the appraisal report. Katzen Marshall did not "use" the trade secret when it created appraisal reports using TDS's information.

Equally flawed is TDS's contention the refusal to return trade secrets constitutes "misappropriation." Broadly, the only two methods of misappropriation under the TUTSA are: (1) acquisition of the trade secret from someone who improperly acquires the trade secret; and (2) use or disclosure of the trade secret without consent of the owner. § 134A.002(3)(A), (B). Examining the plain language of the statute, once a party comes into possession of a trade secret without improper means, it must then use or disclose the trade secret without consent to constitute "misappropriation" under the TUTSA. *Id.*; *see also* §§ 134A.003, 134A.004. Thus, the refusal to return trade secrets, standing alone, does not constitute misappropriation under the Act. And because we hold Katzen Marshall did not "use" TDS's trade secrets by creating appraisal reports, its subsequent refusal to return the information is also not a "use" under the statute.

Because TDS presented no more than a scintilla of evidence Katzen Marshall misappropriated TDS's trade secrets, the trial court did not err in granting Katzen Marshall's no-evidence motion for summary judgment. Our holding the no-evidence summary judgment was properly granted also makes moot its first issue—it only had to

12

present evidence of one method of misappropriation. We overrule TDS's first and second issues.

## ISSUES THREE—EVIDENCE OF DAMAGES

For its third issue, TDS complains it was not required to present evidence of damages. However, because we have determined the trial court properly granted Katzen Marshall's no-evidence summary judgment solely based on a lack of evidence of misappropriation, TDS's third issue is moot. Issue three is overruled.

## ISSUE FOUR—APPLICATION FOR INJUNCTION

TDS's issue four argues fact issues precluded summary judgment on its application for injunctive relief. It urges it presented the trial court with sufficient evidence creating a fact issue, and the trial court should not have granted summary judgment on its request for an injunction.

The TUTSA allows injunctive relief for "[a]ctual or threatened misappropriation." § 134A.003(a). TDS requested both a temporary injunction and a permanent injunction in its live petition.[4] Injunctive relief is a request for equitable relief not a cause of action. *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied), *accord Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011); *see also Cavin v. Abbott*, 613 S.W.3d 168, 176 n.4 (Tex. App.—Austin 2020, pet. denied) (Goodwin, J., concurring); *compare JLMH Invs., LLC v. Family Dollar Stores of Tex., LLC*,

---

[4] Insofar as TDS complains about the denial of the temporary injunction, the record does not demonstrate the trial court conducted a hearing or ruled upon TDS's application for a temporary injunction, and error was not preserved on this issue. TEX. R. APP. P. 33.1(a). We therefore address only TDS's application for a permanent injunction.

No. 02-23-00233-CV, 2024 Tex. App. LEXIS 4143, at *19–20 (Tex. App.—Fort Worth June 13, 2024, no pet. h.) (recognizing standalone right to abate nuisance by injunction even if the underlying claim has been dismissed). A permanent injunction is only available if liability is established under a cause of action. *Cooper*, 325 S.W.3d at 769–70; *Lehmann*, 359 S.W.3d at 625 n.2. TDS requested injunctive relief against Katzen Marshall based upon alleged misappropriation of its trade secrets. Therefore, Katzen Marshall was only required to specifically address the misappropriation cause of action upon which TDS's request for injunction was based, not the request for injunction itself. *Id.* As discussed above, the trial court did not err in granting a no-evidence summary judgment on TDS's misappropriation claim. With no viable cause of action to support its request for injunctive relief, TDS's request for an injunction was rendered moot.

The trial court did not err in disposing of TDS's application for injunction. Its fourth issue is overruled.

**ISSUES FIVE AND SIX—TRADITIONAL SUMMARY JUDGMENT GROUNDS**

For its fifth issue, TDS complains Katzen Marshall was not entitled to a traditional summary judgment because it failed to negate an essential element of its claim, while its sixth issue complains the USPAP rules are not a valid affirmative defense against misappropriation. Because TDS failed to meet its burden under Katzen Marshall's no-evidence motion, TDS's challenge to its traditional motion necessarily fails. *First United Pentecostal Church of Beaumont*, 514 S.W.3d at 219–20; TEX. R. APP. P. 47.1. Accordingly, we overrule TDS's fifth and sixth issues.

14

## CONCLUSION

We hold the trial court properly granted summary judgment. The trial court's judgment is affirmed.


Alex Yarbrough
Justice